UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FOLEY LIVING TRUST DATED
NOVEMBER 5, 2007,

    Plaintiff,

    v.                                                Case No. 24-C-1008

GREGORY AND MAUREEN BURGER,

    Defendants.

## ORDER DENYING MOTION FOR REMAND

       Plaintiff Foley Living Trust Dated November 5, 2007, filed this declaratory judgment action in Brown County Circuit Court against Defendants, Gregory and Maureen Burger. Dkt. No. 1-1. Defendants removed the action on August 9, 2024, pursuant to this court's diversity jurisdiction. Dkt. No. 1. Plaintiff now moves to remand, arguing Defendants have not shown the amount in controversy exceeds $75,000 which is the jurisdictional threshold under 28 U.S.C. § 1332(a). Defendants object. Dkt. No. 24.

       The parties are both member owners of Pharmacy Stars, LLC, which is governed by an operating agreement. That agreement splits up shares of the company into Class V and Class S units. Both parties to this lawsuit own Class V units.

       Article VII of the operating agreement also establishes procedures for transferring units. Dkt. No. 1-1 at 24. Section 7.01(a) provides that members may not sell, gift, or otherwise transfer their units unless the other members consent. *Id*. If a member proposes to gift their units to anyone, Section 7.11(a) provides the company and other members a right of first refusal over that gift. *Id*. at 30. The process is contained in Section 7.02. *Id*. at 24.

For the transfer of Class V units, once a member notifies the company and other members of its intent to gift units, the company has 90 days to exercise an exclusive option to purchase all, but not less than all, of the units. *Id*. If the company either waives that right or reaches its deadline, the option then flows to the other Class V unit owners. *Id*. Those owners then have 60 days to exercise their option. Once all Class V owners waive or reach their deadline, the option then flows to the Class S owners. *Id*. If no party exercises their option, the member may then transfer the units. *Id*.

On April 1, 2024, Plaintiff issued a notice to the company indicating that it sought to gift 10,000 Class V shares to another party. Pursuant to the process outlined above, the company waived its option. On April 12, 2024, Defendants and two other members (the Kvanczs) sent Plaintiff an offer to purchase the shares. They explained that they wanted to purchase all 10,000 Class V units at the fair market value of $286.00 per unit (total value of $2,860,000). Dkt. No. 1-1 at 59.

On April 16, 2024, Plaintiff rescinded its intent to gift the shares. *Id*. at 60. A few weeks later, on May 3, 2024, the Kvanczs changed course and waived their option. *Id*. at 61. Defendants, however, stood firm. On May 6, 2024, Defendants' attorneys sent a letter to Plaintiff explaining their view that Defendants properly exercised their option and, thus, Plaintiff's subsequent attempt to rescind was ineffective. *Id*. at 62–66. In other words, Plaintiff owed Defendants the shares. The Defendants also contended that the Kvanczs' decision to waive their option had no effect on Defendants' right to purchase the shares. *Id*. at 65. In closing, the letter warned that Defendants would seek judicial relief if Plaintiff did not abide by its contractual obligations. *Id*. at 66.

In response, on July 17, 2024, Plaintiff filed a complaint in Brown County Circuit Court seeking a declaratory judgment that: (1) it is the sole owner of the 10,000 shares; (2) the April 12

offer was void for failure to comply with the operating agreement and for lack of consideration; (3) the May 6 offer was void because Plaintiff had rescinded its intent to gift the shares; and (4) Defendants hold no ownership interest in the shares. *Id*. at 11.

Defendants removed the action on August 9, 2024. Dkt. No. 1. Plaintiff now moves to remand the case, arguing Defendants have not shown the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Specifically, Plaintiff argues that because neither party disputes the shares themselves are worth $2,860,000, the result of the declaratory judgment action—the actual amount in controversy—will be $0. The action simply seeks to confirm that Plaintiff owns the shares and Defendants' attempts to buy them were ineffective. Defendants disagree, arguing Plaintiff overcomplicates the analysis. In their view, the amount in controversy in a declaratory judgement action is the "object of the litigation," which are the shares here. It is undisputed they are worth $2,860,000, so Defendants contend this easily clears the hurdle. The court agrees with Defendants.

When someone is sued in state court, that party "has the right to remove a case from state to federal court when the federal court could exercise jurisdiction in the first instance." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510–11 (7th Cir. 2006). In this case, subject-matter jurisdiction was based upon diversity of citizenship. *See* 28 U.S.C. § 1332. Diversity jurisdiction requires the parties to be citizens of different states and the amount in controversy to exceed $75,000. *See id*. It is the latter requirement Plaintiff alleges does not exist. The court must therefore inquire whether the amount exceeds the required threshold.

When a suit seeks declaratory relief, "the amount in controversy is determined by the value to the plaintiff (or petitioner) of the object of the litigation." *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004). The value of the object of the litigation "is the

3

'pecuniary result' that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment." *Id.* In other words, "what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799–800 (7th Cir. 2003). It is the removing party's burden of "showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met." *Oshana*, 472 F.3d at 511.

The complaint here seeks the following declarations: (1) Plaintiff is the sole owner of the 10,000 shares; (2) the April 12 offer was void for failure to comply with the operating agreement and for lack of consideration; (3) the May 6 offer was void because Plaintiff rescinded its intent to gift the shares; and (4) Defendants hold no ownership interest in the shares. The question, then, is whether the "pecuniary result" of these requests exceeds $75,000.

Plaintiff argues it does not. Plaintiff notes that the Trust already owns the shares and argues the goal of this litigation is to maintain the status quo. Nothing in the complaint, it contends, suggests this action will have any pecuniary result to either side if Plaintiff prevails. Plaintiff keeps its shares, and Defendants keep their money. In Plaintiff's view, no amount is actually in controversy.

Surprisingly, there is little authority on the issue Plaintiff has raised. As noted above, Plaintiff cites *America's Moneyland* for the general principle that in suits for equitable or declaratory relief, the amount in controversy is determined by "'pecuniary result' that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment." 360 F.3d at 786. But *America's Moneyland* was a suit seeking an injunction to compel arbitration; it did not address the issue raised here. The obvious pecuniary result to Plaintiff in this case, should it prevail, is that it would retain its shares valued $2,860,000, well in excess of the jurisdictional

4

amount. Likewise, the pecuniary result to Defendants, should they prevail, is that they would pay Plaintiff $2,860,000 in return for the shares. Plaintiffs contend that to determine the amount in controversy, these amounts must be offset. But none of the cases Plaintiffs cite present this exact issue.

In *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799–800 (7th Cir. 2003), for example, the court rejected the plaintiff's argument that the jurisdictional amount was met because the trust corpus exceeded $75,000, when the only relief sought an accounting and unredacted copies of the trust documents. In other words, the value of the trust itself was not in controversy and thus could not be used to determine jurisdiction. Here, however, the dispute is over which party is entitled to the shares that are valued at $2,860,000. Defendants claim they are entitled to buy Plaintiff's shares under the terms of the operating agreement, and Plaintiff seeks a declaration to the effect that they are not so entitled.

*Gould v. Artisoft, Inc.*, 1 F.3d 544 (7th Cir. 1993), on which Defendants rely is also inapposite. In that case, the Seventh Circuit held that the complaint at issue met the jurisdictional threshold because it sought the transfer of shares valued over the jurisdictional amount (at that time, $50,000). *Id*. at 547–48. The plaintiff sought specific performance requiring the defendant, his previous employer, to transfer to him 50 shares of stock he was allegedly owed under his employment contract. *Id*. at 546. In the district court, the defendant argued that the value of the stock was too speculative and thus the plaintiff had not met the amount in controversy requirement. *Id*. The court disagreed, finding the value of the stock in a public or private sale to be above the $50,000 jurisdictional threshold. *Id*. On appeal, the Seventh Circuit affirmed. Using the share price taken from a prospectus the company planned to issue in an upcoming public offering, the court concluded the plaintiff's shares were valued at $115,000 to $135,000. *Id*. at 547. Unlike

this case, however, consideration for the stock, i.e., performance under the employment contract, had already been given and only transfer of the stock remained. *Id*. at 546. Thus, the district court properly exercised jurisdiction.

In this court's view, Defendants have the better argument. What is in dispute in this case is ownership of the shares in Pharmacy Stars, valued at $2,860,000. In *Waller v. Professional Insurance Corporation*, the court explained the principle governing such questions:

> [C]ourts look to the value of the property involved rather than the damages that might be suffered, to determine the jurisdictional amount in suits for injunctions . . . , in suits for specific performance of a contract to convey realty . . . , and in suits to remove a cloud from the title of realty. Underlying these cases is the principle that when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy.

296 F.2d 545, 547–48 (5th Cir. 1961) (citations omitted); *see also Ebensberger v. Sinclair Refining Co.*, 165 F.2d 803, 805 (5th Cir. 1948) ("Contrary to appellant's contentions, the amount in controversy in this case was not the damages which appellee might suffer if its suit for specific performance were denied. It was the value of the property sought to be acquired by the suit, in this case admittedly $7500.").

The same reasoning applies here. The fact that, should they prevail, Defendants must pay for the shares does not change the result. The dispute in this case is over the right to ownership over the shares of Pharmacy Stars that are valued well in excess of the jurisdictional amount. This fact, added to the fact that neither party is a citizen of the same state as the other is enough to establish jurisdiction under 28 U.S.C. § 1332. Plaintiffs Motion to Remand (Dkt. No. 18) is therefore **DENIED**.

Dated at Green Bay, Wisconsin this 28th day of October, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
