UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FOLEY LIVING TRUST DATED NOVEMBER 5, 2007,

      Plaintiff,

   v.                                                Case No. 24-C-1008

GREGORY BURGER and
MAUREEN BURGER,

      Defendants.

---

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

     Plaintiff Foley Living Trust Dated November 5, 2007 filed this declaratory judgment action in Brown County Circuit Court against Defendants Gregory and Maureen Burger. Defendants removed the action to this court on August 9, 2024, and this court has jurisdiction over the case pursuant 28 U.S.C. § 1332. This matter comes before the court on Defendants' motion for summary judgment. For the following reasons, the motion will be granted.

### BACKGROUND

     The parties are both member owners of Pharmacy Stars, LLC, a privately held Wisconsin limited liability company. Pharmacy Stars is governed by an Amended and Restated Operating Agreement dated April 30, 2020 (the Operating Agreement). Pursuant to the Operating Agreement, Pharmacy Stars has two classes of membership interests: Class S units and Class V units. In exchange for units of Class S and/or Class V membership interests, each member of Pharmacy Stars paid a monetary value and was required to sign a Joinder Agreement, whereby the member agreed to become a party and be fully bound by the Operating Agreement. As of May 1,

2021, there were 10 different members of Pharmacy Stars, including Plaintiff and Defendants. At that time, Plaintiff owned 13,440 Class V units and Defendants owned 2,609 Class V units.

The Operating Agreement sets forth several different obligations and rights Class V members have and establishes procedures for transferring units. Section 7.01(a) provides that members may not sell, gift, or otherwise transfer their units unless the other members consent. Dkt. No. 8-1 at 11–12. If a member proposes to gift its units to anyone, Section 7.11(a) provides the company and other members a right of first refusal over that gift. *Id.* at 18. Section 7.11 states:

> **Section 7.11 Right of First Refusal**
>
> **(a) Option to Purchase.** If a bona fide offer is received by a Member for the purchase of any of the Member's Units, and the offer is one that the Member would in good faith accept, then before accepting the offer, the Member shall first give notice to the Company and to the other Members. The Member shall include a copy of the bona fide offer along with any such notice. Upon receipt of the notice, the Company and the other Members shall have the option to purchase all of the Units subject to the bona fide offer. This option shall be subject to the procedure specified in Section 7.02, and for purposes of that Section, the "Option Date" shall be the date of receipt of the notice. The purchase price and the terms and conditions applicable to the option shall be the price, terms and conditions set forth in the bona fide offer.
>
> A proposed gift by a Member to anyone shall be treated as a bona fide offer subject to this Section. For this purpose, the Option Date shall be the date of the gift, and the price and the terms and conditions of such offer shall be the price determined under Section 7.03 (and for purposes of that Section the "Valuation Date" shall be the end of the calendar month preceding the Option Date) and the terms and conditions of transfer shall be as specified in Section 7.04.

*Id.* Section 7.02 details the option to purchase process. *Id.* at 12–13.

With respect to the transfer of Class V units, once a member notifies the company and other members of its intent to gift units, the company has 90 days to exercise an exclusive option to purchase all, but not less than all, of the units. *Id.* If the company either waives that right or the deadline to exercise its option expires, the option flows to the other Class V members. *Id.* Those members then have 60 days to exercise their option to purchase at the same price and on the same

2

terms all, but not less than all, of the Class V units by giving written notice to the transferor during the 60-day period. *Id.* In the event more than one member exercises their option to purchase the units, each member shall have the right to purchase a fractional portion of the units, the numerator of this fraction being the number of units held by the member and the denominator being the total number of units held by all members who elect to purchase. *Id.* Alternatively, the right to purchase may be allocated among the members who elect to purchase in any proportion agreed upon by them. *Id.* If the Class V members decline the option to purchase, the option then flows to the Class S members. *Id.* If no party exercises their option, the member may transfer the units. *Id.*

On April 1, 2024, Plaintiff provided notice to the company and the other members of its intention to gift 5,000 Class V units of its membership interest in Pharmacy Stars LLC to two individuals for an aggregate gift of 10,000 Class V units. The notice stated that the subject units represented 11% of the company's total 90,909 issued membership interests, at a fair market value of $2,860,000.00. The notice also requested that the company and the other members waive their respective options and applicable rights of first refusal to the units.

On April 5, 2024, the company waived its option to purchase the 10,000 units. As a result, the 60-day period for the Class V members to exercise their respective options expired on June 4, 2024. On April 7, 2024, two Class V members, David and Denise Kvancz, waived their right to purchase the 10,000 units; however, on April 11, 2024, the Kvanczes withdrew their stated intent to waive their rights to purchase the Class V units. The following day, on April 12, 2024, the Kvanczes and Defendants provided a notice of their election to exercise their options to purchase the units. Defendants contend that, by the time they provided the notice, all other Class V members had waived their option, so Defendants and the Kvanczes stated they would purchase "all 10,000 Class V units offered from the Foley Living Trust at the stated fair market value of $286.00 / Unit

3

as prescribed in the Operating Agreement." Dkt. No. 27-4. The notice stated that the "members intend to divide the Class V Units equally, 5000 Units to each member." *Id.*

On April 16, 2024, Plaintiff sent notice to the company and the members rescinding and withdrawing the offer to give the 10,000 units. A few weeks later, on May 3, 2024, the Kvanczes waived their option to purchase. But Defendants stood firm and, on May 6, 2024, reaffirmed their election to exercise their option to purchase the 10,000 units. On May 23, 2024, James and Nancylee Jorgenson, Randi Flagstad, and Wendy Bennewitz provided separate notices exercising their option to purchase all of the 10,000 units, even though they had waived their option to purchase earlier.

On June 6, 2024, Plaintiff sent a letter referencing its April 16, 2024 recission and withdrawal of the offer to gift the 10,000 units and refusing to complete a transfer of those units to Defendants. On June 18, 2024, Defendants sent a notice of default to Plaintiff as a result of Plaintiff's refusal to complete a transfer of the 10,000 units to Defendants. Defendants provided Plaintiff with 30 days to cure the breach and reminded Plaintiff of its indemnification obligations under the Operating Agreement.

In response, Plaintiff filed a complaint in Brown County Circuit Court on July 17, 2024, seeking a declaratory judgment that (1) it is the sole owner of the 10,000 units, (2) the April 12, 2024 offer was void for failure to comply with the Operating Agreement and for lack of consideration, (3) the May 6, 2024 offer was void because Plaintiff had rescinded its intent to gift the units, and (4) Defendants hold no ownership interest in the units. Defendants removed the action to this court and responded with counterclaims of their own. Count I alleges breach of contract and seeks specific performance for Plaintiff to sell the units to Defendants; Count II requests a declaratory judgment that Plaintiff did not have the right to rescind the offer and, as a

4

result, Defendants now own the units; and Count III asks for indemnification under the terms of the Operating Agreement for Defendants' losses and attorney's fees.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Defendants argue that Plaintiff breached the Operating Agreement by refusing to complete the sale and transfer of Class V units to Defendants. The Operating Agreement provides that it is governed by the laws of the State of Wisconsin. Dkt. No. 8-1 at 27. Prevailing on a claim for breach of contract under Wisconsin law "requires proof of three elements: (1) a valid contract; (2) breach of that contract by the defendant; and (3) damage from the breach." *Gallo v. Mayo Clinic Health System-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018); *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200 (1971). In Wisconsin, the goal of contract

interpretation is to "ascertain the intent of the contracting parties as reflected in the contract language." *Milwaukee Police Supervisors Org. v. City of Milwaukee*, 2023 WI 20, ¶ 16, 406 Wis. 2d 279, 986 N.W.2d 801. If a contract is unambiguous, then the question of intent turns solely upon "the plain and ordinary meaning of the text." *Id.*

Defendants assert that the Operating Agreement provided an irrevocable option to purchase the 10,000 Class V units once the triggering event—Plaintiff's notice of its intent to gift the units—occurred. The court agrees. Section 7.11(a) of the Operating Agreement provides that, if "a bona fide offer is received by a Member for the purchase of any of the Member's Units, and the offer is one that the Member would in good faith accept, then before accepting the offer, the Member shall first give notice to the Company and to the other Members." Dkt. No. 8-1 at 18. "[U]pon receipt of the notice, the Company and the other Members shall have the option to purchase all of the Units subject to the bona fide offer." *Id.* The Operating Agreement states that "[a] proposed gift by a Member to anyone shall be treated as a bona fide offer." *Id.* Plaintiff's notice to the company and the other members that it "intends to convey the Gifts to the Donees" triggered the option to purchase process. *See Milner v. Milner*, 363 Ga. App. 69, 870 S.E.2d 584, 591 (2022) (concluding, in a case regarding an operating agreement with similar language, that "the right of first refusal here is triggered when the company receives notice of the shareholder's intent to sell").

Defendants also assert that, under the terms of the Operating Agreement, the option to purchase ripened into a contract of sale once Defendants accepted the offer and provided notice of their intention to exercise their option to purchase the 10,000 units. Plaintiff counters that, even though Defendants made an offer to purchase the 10,000 Class V units, it was entitled to withdraw its offer to gift the 10,000 units for two reasons. First, Plaintiff argues that Defendants and the Kvanczes' April 12 joint notice to purchase was frustrated by the Kvanczes' decision to withdraw from the joint offer to purchase. It contends that, because Defendants and the Kvanczes jointly

6

promised to purchase the shares, when the Kvanczes withdrew, the joint offer became impossible to fulfill as originally contemplated and disclosed to Plaintiff. Plaintiff argues that, as a result, it was justified in withdrawing the offer on April 16, 2024, before Defendants could accept the offer to purchase all of the units on their own. But Plaintiff is mistaken. Once a right of first refusal is triggered, it ripens into an option that is irrevocable for its duration. *See* 1 Williston on Contracts § 5:16 (4th ed. 2021) (noting that an option "constitutes a continuing irrevocable offer" that "cannot be unilaterally withdrawn"). In this case, once the Class V members received notice of Plaintiff's intent to gift the 10,000 units and the right of first refusal ripened into an option, Plaintiff could not prevent Defendants from exercising the option by rescinding the offer during the 60-day period. *See Milner*, 363 Ga. App. at 77 (holding that "once BAII received notice of Whit's purported sale of his shares to Chad and its right of first refusal thus ripened into an option, Whit had no power to prevent BAII or Lat from exercising the option for its duration, whether by rescinding the purchase agreement or otherwise").

Plaintiff provided notice of its intent to gift the 10,000 units on April 1, 2024, and the company declined to purchase the units on April 5, 2024. Thus, the Class V members had the exclusive option for a period of 60 days following the company's rejection of the option, or until June 4, 2024, to elect to purchase the units. On April 12, 2024, Defendants and the Kvanczes submitted a notice to exercise the option to purchase all units. The letter stated that, because "all other Members have waived their option, the undersigned members will purchase all 10,000 Class V Units offered from the Foley Living Trust at the stated fair market value of $286.00 / Unit as prescribed in the Operating Agreement" and intended to "divide the Class V Units equally, 5000 Units to each member." Dkt. No. 27-4 at 1. After the Kvanczes withdrew their acceptance of the offer, Defendants submitted a notice to purchase all 10,000 Class V units on May 6, 2024. *See* Dkt. No. 27-6 at 4 ("For the avoidance of any doubt, the Burgers affirm and provide notice to the

7

Company that they will purchase all Foley's 10,000 Class V Units that are subject to the right of first refusal at the stated fair market value of $286.00/Unit."). In short, Defendants timely exercised their option to purchase within the 60-day period.

Second, Plaintiff argues that it could withdraw its offer because Defendants did not provide independent consideration converting the right of first refusal into an option contract. While the consideration provided for an option to purchase must be separate from the consideration provided in the actual sale, an option to purchase *does not* require consideration "completely independent from the consideration provided for other terms of the contract containing the option." *Collett v. Richardson*, 2013 WI App 94, ¶ 17, 349 Wis. 2d 528, 835 N.W.2d 292 (citing *McLellan v. Charly*, 2008 WI App 126, ¶ 20, 313 Wis. 2d 623, 758 N.W.2d 94). "Like an option contract, a right of first refusal must be supported by consideration." *MS Real Estate Holdings, LLC v. Donald P. Fox Family Trust*, 2015 WI 49, ¶ 24, 362 Wis. 2d 258, 864 N.W.2d 83.

In this case, Defendants paid a monetary value as consideration for their units and their rights and obligations under the Operating Agreement. The Operating Agreement contained multiple terms, including but not limited to the option rights to purchase certain units pursuant to Sections 7.02 and 7.11. Because consideration for a contract that contains multiple terms is sufficient consideration for each term in the contract, *Collett*, 349 Wis. 2d 528, ¶ 17, the consideration Defendants furnished for their units and status as members of Pharmacy Stars was also sufficient consideration for the option to purchase. In addition, Defendants paid consideration for the option separate and distinct from the consideration they offered for Plaintiff's units (the $2,860,000.00 fair market value price for the units). Accordingly, the option was not invalid for lack of consideration.

Plaintiff argues that, even if it could not revoke its offer, Defendants are not entitled to the relief they seek because three other Class V members, who originally waived their right to

8

purchase, revoked their waivers and accepted the offer during the 60-day period. Plaintiff asserts that, as a result, the units must be divided proportionately among Defendants and those members (the Jorgensons, Ms. Flagstad, and Ms. Bennewitz). Defendants cite to several cases from other courts which have held that, where an option is rejected outright, the optionee cannot later revive the option by later tendering an acceptance. *See, e.g.*, *Landberg v. Landberg*, 24 Cal. App. 3d 742, 757, 101 Cal. Rptr. 335, 345 (1972) ("The rejection of an offer kills the offer. It is well settled that when an offer under an option contract has been rejected, the party rejecting cannot subsequently, at his option, accept the rejected offer and thus convert the same to an agreement by acceptance." (citations omitted)); *Beaumont v. Prieto*, 249 U.S. 554, 555–56 (1919); *James v. Darby*, 100 F. 224, 228–29 (8th Cir. 1900); *Jones v. Moncrief-Cook Co.*, 1910 Okla. 856, 865 (1910). The court finds these cases persuasive. The right to exercise an option is lost once it is rejected, even if a later attempt at exercising the option occurs within the original time prescribed for it. *See* REST. 2D CONTRACTS § 38 ("An offeree's power of acceptance is terminated by his rejection of the offer, unless the offeror has manifested a contrary intention."). Once the Jorgensons, Ms. Flagstad, and Ms. Bennewitz waived their option to purchase the units, they were unable to later exercise the option to purchase. Therefore, Defendants are entitled to all 10,000 units, and Plaintiff has breached the Operating Agreement by refusing to sell the units to them.

Defendants assert that, as a result of Plaintiff's breach, Defendants are entitled to specific performance. "Specific performance is an equitable remedy that rests in the discretion of the court." *Tesmer v. Charter Films, Inc.*, 396 F. Supp. 2d 969, 977 (W.D. Wis. 2005) (citing *Edlin v. Soderstrom*, 83 Wis. 2d 58, 70, 264 N.W.2d 275 (1978)). Section 9.03 of the Operating Agreement provides:

> The parties acknowledge that it may be impossible to measure in money the damages that will accrue to any party by reason of a failure to perform any of the obligations set forth in this Agreement, and therefore agree that the parties shall be

> entitled to specific performance of the terms of this Agreement in addition to any other remedies to which they may be entitled at law or in equity.

Dkt. No. 8-1 at 24. "[W]hen a contract specifies remedies available for breach of contract, the intention of the parties generally governs." *Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶ 24, 348 Wis. 2d 360, 842 N.W.2d 240 (citing *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2010 WI 44, ¶ 37, 324 Wis. 2d 703, 783 N.W.2d 294). Specific performance may be granted "where damages are an inadequate remedy and the nature of the contract is such that specific enforcement of it will not be impossible or involve too great practical difficulties." *Id.* (quoting 25 WILLISTON ON CONTRACTS § 67:1 (4th ed.)). "Although 'ordinarily a party will not be compelled to specifically perform a contract for the sale of shares of corporate stock . . . if the shares cannot be readily secured in the market specific performance is allowed.'" *Tesmer*, 396 F. Supp. 2d at 977 (quoting *Kurth v. Hauser*, 262 Wis. 325, 327, 55 N.W.2d 367 (1952)) (alterations in original). Pharmacy Stars is a privately held limited liability company and membership interests cannot be readily secured in the market. The court concludes that the appropriate remedy is that Plaintiff specifically perform its obligations under the Operating Agreement and sell the 10,000 units to Defendants for $286.00 per unit.

Finally, Defendants assert that they are entitled to indemnification. Section 9.01(a) of the Operating Agreement states that "[i]f a Member breaches or violates this Agreement or fails to perform any of his, her or its respective obligations hereunder, . . . any one or more of the other Members shall have the right to give such Member a notice of default." Dkt. No. 8-1 at 22. The Operating Agreement also includes an indemnification provision that provides:

> Any defaulting Member hereby indemnifies each of the other Members and the Company and holds each of them harmless from and against all loss, damage or liability occasioned by such default including, without limitation, any liability to creditors of the Company. A failure by a defaulting Member to perform upon this indemnity with respect to the Company and/or any one or more of the other Members within thirty days of receipt of a demand therefor made by any one or

10

> more of the other Members upon the defaulting Member, shall be deemed to be a failure to pay money and, without further notice, demand or time to cure, each of the other Members shall have the rights set forth in Section 9.02.

*Id.* at 22–23. Defendants sent a notice of default to Plaintiff on June 18, 2024 based on Plaintiff's refusal to sell the units to Defendants. The notice of default reminded Plaintiff of its obligation to indemnify Defendants for the losses and damages caused by its breach. By not selling the units to Defendants, Plaintiff breached the Operating Agreement and has not cured its default. Under the plain terms of the Operating Agreement, Plaintiff must indemnify Defendants for any loss or damage caused by the default.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 26) is **GRANTED**. Defendants provided valid notification of acceptance and election to purchase the units; therefore, Plaintiff has breached the Operating Agreement by refusing to sell the units to Defendants. Defendants are entitled to specific performance whereby Plaintiff must sell the units to Defendants for $286.00 per unit. Plaintiff must indemnify Defendants for any loss or damage caused by Plaintiff's breach of the Operating Agreement and default. Plaintiff's claim for declaratory judgment is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 19th day of February, 2025.

  _____
  William C. Griesbach
  United States District Judge